## ALLEN v. HILL.

(Court of Appeals of District of Columbia. Submitted January 10, 1921. Decided February 7, 1921.)

No. 1326.

1. **Patents ☞113 (7)—Concurrent action of patent officials not disturbed.**

In so far as the Examiner of Interferences, the Examiners in Chief and the Commissioner of Patents were in accord in an interference proceeding, their judgment, when apparently sound, will not be disturbed.

2. **Patents ☞90 (6)—Application held not reduction of invention subsequently claimed to practice.**

Where an earlier application by a party to an interference proceeding did not constitute a constructive reduction to practice, if it disclosed that a certain lever was fulcrumed on another lever, and it was so specified in the claims and specifications, the claim of priority denied, though it was contended that the drawings showed that the claims and specifications were incorrect.

3. **Patents ☞90 (6)—Drawing must be certain and conclusive to constitute reduction to practice, when contrary to specification.**

To base a holding of a constructive reduction to practice on a drawing in an earlier application, in the face of a positive contrary statement in the specification, the drawing should be certain and conclusive.

Appeal from a Decision of the Commissioner of Patents.

Interference proceeding in the Patent Office between Edward B. Allen and George S. Hill. From a decision awarding priority to Hill, Allen appeals. Affirmed.

James A. Watson, of Washington, D. C., and J. Edgar Bull, of New York City, for appellant.

Alfred H. Hildreth, of Boston, Mass., for appellee.

---

SMYTH, Chief Justice. The invention involved in this interference relates to buttonhole cutting and stitching machines. There are nine counts, of which 2 and 7 are typical.

2. In a buttonhole sewing machine, the combination with stitch-forming mechanism, of a work clamp, a buttonhole cutting device, a cutter shaft with controlling means for causing it to perform a single rotation only preparatory to a buttonhole stitching operation, means carried by the cutter shaft for actuating the cutting device, and means also carried by the cutter shaft and acting independently of said actuating means for effecting the closing of the work clamp.

7. A buttonhole sewing machine having, in combination, a stitch-forming mechanism, a work clamp, a cutter, a cam shaft, a cam on the shaft and connections for closing the clamp, a second cam on the shaft and connections for relatively moving the clamp and cutter into and out of cutting relation, a third cam on the shaft and connections for operating the cutter, mechanism thrown into operation by the operator for driving the cam shaft, devices for stopping the cam shaft, mechanism for actuating the stitch-forming mechanism and work clamp to sew about a buttonhole, and means for stopping said mechanism after a buttonhole is completed.

[1] Counts 1, 2, 4 and 5 were awarded by the Examiner of Interferences to Allen, and the remaining counts to Hill. Allen admits that' he cannot make count 3. The Examiners in Chief gave all the counts to Hill, and they were affirmed by the Commissioner. The three tribunals, therefore, are in accord as to all the counts but 1, 2, 4 and 5. In so far as they are in accord their judgment seems sound, and on the authority of Lautenschlager v. Glass, 47 App. D. C. 443, Rees v. White, 48 App. D. C. 149, and Greenawalt v. Dwight, 258 Fed. 982, 49 App. D. C. 82, we will not disturb it. This leaves counts 1, 2, 4 and 5 to be considered.

[2] The Examiner of Interferences in awarding these counts to Allen proceeded upon the hypothesis that an earlier application of his filed September 6, 1912, and upon which a patent issued in 1916, effected a constructive reduction to practice. If it disclosed that a certain clamp lever *223* was fulcrumed on the upper cutter lever *108*, it did not do so, and the debate centers about that point. It specified that the clamp-closing lever *223* "fulcrumed intermediate its ends at *224* upon the upper cutter-carrying lever." Not only that, but his claims 40 and 41 of the same application included as an element "a clamp-closing rock lever fulcrumed upon said cutter lever and adapted," etc. Those claims were allowed to Allen in that application; but after this interference had been declared, and after he had access to Hill's papers, and had discovered the necessity of establishing an earlier date for himself than he then had, Allen canceled the claims. He now argues that the claims and specification were erroneous. If so, it is remarkable how this error persisted, for he carried it into his British patent, where he describes "the rock lever *223* fulcrumed intermediate its ends at *224* upon the upper cutter-carrying lever:" Allen is a man highly skilled in the art. He tells us that he gives little attention to the specification of his application, but that it is otherwise with his claims. "The claims," he testified, "I invariably read very carefully several times." In view of this is it not rather surprising that he overlooked the error, if there was one, which lay in the claims of the American and British applications?

But Allen says that the drawings of his earlier application disclose that the claims and specifications are incorrect. We are by no means persuaded that they do. The First Assistant Commissioner, dealing with this question, said:

"Where there is a specific statement in the specification of an application as to the manner in which the parts are mounted and operated, it would require a very clear showing in the drawing to permit a change of this statement."

And he reached the conclusion that, if any change was to be made in the matter we are considering, it should be in the drawings so as to make them conform to the specification; in other words, that a definite statement in the specification is more reliable than a drawing, especially where the latter, as here, is not clear.

[3] We think the Examiners in Chief summed the matter up correctly when they said, in effect, that to base a holding of a constructive reduction to practice of an invention upon a drawing in the face of a positive statement in the specification contrary to what was contended for, the drawing should be certain and conclusive, which is not so in the present case. Accordingly they held that the Examiner of Interferences was in error in finding that Allen's earlier application was a constructive reduction to practice of the invention of the counts 1, 2, 4 and 5, and in this connection, as we have said, the Commissioner concurred.

Allen contended at the bar that, if he could use the testimony of Hill's witnesses in a former interference referred to by him, he would be able to demonstrate the correctness of his theory. But it is stipulated in the record that he might do so. Why, then, complain? We do not think, however, that the testimony would have helped him any.

We believe the Patent Office is right, and therefore the decision of the Commissioner is affirmed.

Affirmed.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.